# STATE OF OREGON,
*Respondent,*

*v.*

# TERRANCE DUPREE JACOB,
*Appellant.*

## (9105-32225; CA A73137)

866 P2d 507

David E. Groom, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Robert B. Rocklin, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Rossman, Presiding Judge, and De Muniz and Leeson, Judges.

De MUNIZ, J.

**De MUNIZ, J.**

Defendant appeals his conviction for murder, ORS 163.115, after a jury trial. We affirm.

At about 2 a.m. on April 17, 1991, defendant shot and killed the victim with a single shotgun blast to the head. The killing occurred on a largely deserted Portland street where there is heavy drug use and where gun shots are heard on a daily basis. Defendant did not deny killing the victim but claimed self-defense. He testified that the victim had lifted his shirt to display a gun in his waistband and was reaching to pull it out when defendant shot him. The only other witness to the murder was a close friend of the victim. He testified that the victim did not have a gun and did not reach toward his pockets during the encounter.

As part of his case, defendant intended to call four witnesses — Gill, Felix, Jenkins and Strouder. All four invoked a Fifth Amendment privilege not to testify. Defendant moved to compel the state to grant immunity to the witnesses, which the court denied. Defendant then sought to admit statements that the four had given to Detective Hill during the investigation, arguing that the statements were admissible under the hearsay exception for statements against interest. OEC 804(3)(c).[1] The court refused to admit the evidence, which defendant assigns as error.

Defense counsel made two offers of proof through Hill. Hill related the following as to what the four witnesses told her that they had seen between the time of the killing and the arrival of the police. Each had seen a number of people approach the body and remove items from it. Felix had stated that he had seen people taking dope, jewelry, and money off of the victim's body and that he thought the victim might have had a gun. Gill had stated that, at the time of the victim's

---

[1] OEC 804(3)(c) provides:

"A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

death, the victim had a gun, beeper, drugs, jewelry and money, which were stripped from the body. Gill also had said that he had seen the victim earlier with a gun stuck in his waist band. Jenkins had said that she saw people remove a watch from the victim's body and that she had found about $20 on the body. She had said she had not seen a gun at that time. Strouder had stated that she had been at a nearby "rock" house at the time of the murder and had seen people taking things from the body.

When the police arrived, there was no gun on the victim, and his pants had been unzipped and pulled down. The medical examiner found a gold earring in the victim's ear, a gold colored chain around his neck and cocaine tucked behind his genital region. Hill testified to the jury that she had received information that items had been removed from the body before the police arrived.

Defendant argues that the court's refusal to allow Hill to testify concerning the witnesses' statements gutted his claim of self-defense, because he was unable to corroborate that the victim was reaching for a gun or, at least, was armed with a gun at the time of the shooting. He argues that the statements met the three requirements to be admitted under OEC 804(3)(c): The witnesses were unavailable; the statements were adverse to the penal interest of each and were offered to exculpate the accused; and there was sufficient corroboration of trustworthiness for admissibility.

The parties stipulated that the witnesses were unavailable. Defendant contends that, because their unavailability was based on their Fifth Amendment privilege not to testify, the court must necessarily have concluded that the statements were against penal interest.

The record does not support that conclusion. The privilege against self-incrimination is not absolute, *State ex rel Johnson v. Richardson*, 276 Or 325, 555 P2d 202 (1976), but the trial court appears to have assumed that the witnesses could claim the privilege without any showing. It explained to each witness that she or he did not have to testify and then asked if the witness wished to testify. Each invoked the constitutional privilege.

Defense counsel, who had believed that the witnesses would testify on defendant's behalf, asked the witnesses questions pertaining to whether they had spoken with the police or with him. However, counsel's only challenge to the court's decision to allow the witnesses to claim the privilege against self-incrimination was on the ground that the witnesses might have waived any privilege by talking to the police and to him. During the argument as to whether the statements could be admitted under the hearsay exception, the state argued that the statements were not against penal interest, and defendant's counsel noted that the state's position was logically inconsistent if the court was allowing the witnesses to invoke their privilege not to testify. However, defense counsel did not contest whether the witnesses were entitled to invoke the privilege against self-incrimination and does not assign the grant of that privilege as error.

We agree with the state that the only statements that conceivably could have been incriminating were Jenkins' statement that she had found about $20 on the victim's body and Strouder's statements that she had been in a "rock" house. However, nothing suggests that either witness was aware of any possible criminal liability when they made the statements. Furthermore, even if the statements might be against a penal interest, that someone took $20 or was in a "rock" house[2] is not "so far" against that interest as to ensure reliability of the statements under OEC 804(3)(c):

> "Whether a statement is in fact against the declarant's interest must be determined from the circumstances of each case. A statement admitting guilt and implicating another person, made while in custody, may well spring from a desire to curry favor with the authorities and hence fail to qualify as being against the declarant's interest. On the other hand, the same words spoken under different circumstances, *e.g.*, to an acquaintance, would have no difficulty in qualifying." Commentary to the Oregon Evidence Code *quoted in* Kirkpatrick, *Oregon Evidence* 636 (2d ed 1989). (Citations omitted.)[3]

---

[2] Under ORS 167.222, "frequenting" a place where controlled substances are used requires repeated visits or remaining at a place while permitting other persons to use controlled substances. Strouder's statement does not demonstrate that those requirements were met.

[3] Indeed, apart from arguing that, because the judge's rulings necessarily show that the statements must be against penal interest, defendant does not contend that

The statements did not meet the test for admission under OEC 804(3)(c),[4] and we find no error.

Affirmed.

.

---

the statements meet the test that the statements would subject the declarant to criminal liability. Rather, he posits that, should we remand, the court could allow the witnesses to testify as to what they observed and exclude testimony as to acts that might incriminate them.

[4] Because the statements do not meet the second requirement for admissability under OEC 804(3)(c), we do not address the third requirement that there be corroborating circumstances that clearly indicate the trustworthiness of the statements.